when I arrived this morning saying he was going to be checking out the sound system in the courtrooms I said how long have you worked for this court he said 14 years I asked him how many different sound systems have we had in the last 14 years and he couldn't tell me off the top of his head but the point is if you can't hear us too bad we'll tell the lawyers to speak up because you know about that we would urge the council to take note of our traffic light system when the yellow light comes on you have two minutes when the red light comes on you may conclude your argument unless you are answering questions from the court we have also read the briefs and record excerpts we probably have not read the entire record and we appreciate record sites when you need to rely on them first case of the morning is number 1430801 Brauner v. Coody and we'll hear from Ms. Glazer Good morning may it please the court this is an 8th amendment case involving a prisoner alleging that a number of different prison officials have violated his 8th amendment rights claiming that they acted with deliberate indifference to his serious medical needs there is no dispute that he had serious medical needs and that the defendants knew about it what is disputed is a legal dispute not a factual one is whether the treatment that he received and is receiving which has been extensive amounts to deliberate indifference originally he did not distinguish the conduct of the defendants he didn't do so really until briefing but each their two assistant wardens who are accused of doing the same thing which is allegedly nothing in response to his supposedly direct complaints though he was never really too clear on what it is he told them or when we know that do you have any speculations why all the judges of the middle district recused I don't your honor judge Jackson didn't give reasons I know it's a six-month gap between two filings and then all of a sudden they all recuse maybe counsel on the other side knows and then the other question I have is was there any indication the magistrate judge issued a report and recommendation that the complaint be summary judgment be granted for the defendants and then judge Afrik about ten days later reversed that but was there any communication between judge Afrik and the parties before maybe more than ten days but before he changed his mind or changed that idea no not that I'm not that I'm aware of your honor there was no communication with judge Afrik before his decision came out shortly thereafter we had a status conference to talk about trial dates but as far as I know he didn't have any communication before the order came out and with no one asked him after he just has basically that one sentence statement that there's a fact issue no one asked him to clarify what the fact issues were no your honor it's hard to ask for a reconsideration or a written reasons when the rule doesn't the rules don't really provide for such a thing and you know our clock was ticking for this appeal and a lot of people ask for versus reconsideration just a clarification in the district court but right um why shouldn't we just remand and ask him to identify the fact issues that were unmentioned in his order I don't think you need to there as far I can't find any fact issues there are legal disputes about whether conduct amounts to deliberate indifference but a dispute about whether treatment was good enough whether pain medication was strong enough that those are not material fact disputes because they do not bear on the deliberate indifference question well let's just consider what is cited in Mr. Bronner's brief which is that each of the three I personally am focusing on the doctors each of the doctors said I prescribed pain medication I prescribed regular wound changes wound dressing changes and he purports to cite the medical records which presumably were kept on a daily basis we haven't been into those thoroughly but presumably and then do not identify wound dressing changes on many days or necessarily identify when the pain medication was administered so what are we to make of that there are both pain administration charts and wound management charts in the medical record they are not complete there are the medical record is not the easiest thing to read but they are referenced in both briefs but a missed wound dressing every now and then is not indicative of deliberate indifference either nor is it attributable to the doctors Mr. Bronner makes it very clear that the doctors were not changing his dressings daily it was the nurses who were not sued this is very similar to the situation that was presented in the Stewart case where the same kind of claims were made with regard to the pain medication again there's no dispute each doctor did prescribe pain medication and Mr. Bronner's complaint is that it wasn't strong enough he wanted narcotic Lortab now let me ask you a question since these ulcers were below the waist and he's a paraplegic is there evidence in the record that I saw something about he can't feel anything below the waist is so could you be in pain if you can't feel anything or can you feel surface wounds the surface wounds he was complaining of he could not feel and he the dr. Collins referred him to a neurologist dr. Barkmeyer who did say that he did not feel the wounds that he was complaining he felt now there are residual effects of his actual spinal cord injury which could cause some pain which was referred pain or sort of phantom pain yes it's similar it's similar to that which was treatable with Neurontin which he was prescribed and trying to find the record citation I have it here somewhere for dr. Barkmeyer's findings are in the record page 1638 paragraph 16 that was dr. Collins's affidavit and in the medical record part of the record at 799 and 7-eleven like the doctors did have doubts as to all the all along as to whether mr. Bronner felt the pain he was in some pain but it was more attributable to the the fevers and things that were associated with infections which the record does reflect would come and go he was treated with antibiotics and wound chain dressing changes and physical therapy and all kinds of different things and he would get better and then he would get worse and then he would get better and he deposition testimony and that's what had happened since he was originally injured did he have a compromised immune system apart from being paraplegic I don't I don't know record doesn't say it may I'm not clear on that I do know that he has been suffering ulcers since his original injury which was I think in 2005 that was a motor vehicle accident he didn't so about it um so I'm not exactly sure but so but uh so with with regard to the the three doctors they each did provide treatment there is no indication that any of them ignored him and the allegation that that's in plaintiff's brief that they intentionally treated him incorrectly is only backed up by the conclusion that they must have been treating him incorrectly because he still has this condition that's again his testimony in his deposition belies that statement by saying he would get better and he would get worse and he would get better and it was just this cycle along with the testimony of the from the doctors that he started becoming a non-responsive to antibiotics so they had to change the antibiotics the wound care records reflect that depending on his condition the wound dressing orders would be different sometimes it was once a day sometimes it was twice a day but he has been dissatisfied with his treatment he disagrees with the doctor's conclusions and with their actions he doesn't believe that he's been treated well enough but none of these things amount to deliberate indifference a prime example of that is there's a repeated request for a slide board which is a device that all of the doctors and their medical judgment says he doesn't need because he gets assistance from orderlies and nurses to get out of bed and plaintiff's deposition at record 1660 page 21 lines 20 through 25 he concedes he gets assistance getting in and out of bed so he's clearly in this instance with the slide board just challenging the exercise of medical judgment by these medical professionals he doesn't need this device because he's getting help the same thing with the turning the plaintiff alleges that prison policy dictated that nurses were supposed to regularly however he was capable of turning himself he had a trapeze over his bed and he did he didn't turn himself as often as the doctors told him to much how much he weighs when I'm no no not at all he's a small guy not sure how tall he is but he's pretty thin one of the things he keeps complaining about is weight loss arising from not from nausea and things like that that were related to some medication he was okay so and I should mention that the plaintiff mentions in their brief that he was deprived of an air mattress a custom bed mattress that is not in this lawsuit at all the plaintiff had a custom air mattress at the time he filed suit he did not mention it until much much later and when he was talking about a rojo cushion which is it they mentioned it at pages 34 and 36 of the plaintiff's brief which is 57 59 in the electronic one a rojo cushion that's a wheelchair pad not at issue in this allegation is a perfect example of a reasonable response from prison officials to an alleged condition posing a substantial risk of serious harm the plaintiff alleges the showers were unconstitutionally unsanitary essentially and that the defendants were deliberately indifferent to it I thought the records show they were clean twice a day it does the plaintiff disputes that he says that a nurse told him never to use the shower that's hearsay obviously not admissible on a motion for summary judgment the doctors I think it was dr. Collins testified the showers are clean twice a day with the Clorox based solution in addition mr. Brawner was given the opportunity to shower before the rest of the offenders he was also given his own personal spray bottle of not to use the shower but to hold these defendants personally liable for money damages for the cleanliness of the shower in light of their response to his complaints not I mean whether it was unconstitutionally you know unsanitary or not their responses were reasonable and no case has been cited showing otherwise did you have a question no ma'am I don't think so and I think the the final claim is this claim of supervisory liability it's not very clear it's difficult to understand how the the allegations plaintiff is attempting to make tend towards a personal involvement of each of these doctors but yet also trying to hold them liable under a theory of supervisory liability for the actions in it or in actions of the nurses there is no allegation pleaded or proven in opposition to the motion for summary judgment that brings that beyond a claim of negligence or vicarious liability which is obviously not allowed on a motion for summary judgment in a 1983 claim I have some other questions I think I'll save for rebuttal thank you all right thank you very much okay mr. Suba good morning your honors please the court my name is Christopher Suba I'm here on behalf of mr. Bronner this case presents what I think is a rather unique issue because it is trying to dispose of an issue the issue of qualified immunity which the Supreme Court has found unquestionably to be a question of law however it is based upon a series of precedent underlying case law in this court as well as in other circuit courts that applies a fact-based analysis to whether or not these officers were actoring acting with deliberate indifference to the medical needs of mr. Bronner as miss Glazer stated there is no dispute as to the seriousness of his injuries the seriousness of his medical condition and there is no dispute that he has the constitutional right to adequate medical treatment at what point did you get involved in the case we became involved several months ago shortly before filing the the appeal was filed to this court okay so you weren't involved in the deposition no ma'am okay um the first thing that I would suggest to this court is that this is and this has been briefed that this is not an appellable judgment I'm going to assume that the court wants to hear far more than that and wants to get to perhaps the facts of the case and not spend much time on me sitting here talking about whether or not this is in fact appellable I think that would be a fair yes ma'am but I do I do suggest and we have stated this in our brief that the lower court denied their motion for summary judgment and stated very explicitly that the record created or contained facts that created genuine issues of material fact upon which a reasonable jury could find deliberate indifference in this situation you spoke to her about whether or not there was any reason for that judgment or if they if he if anyone requested any reasons we did not we were not involved in that in that end perhaps we may we would have but we do feel that the while the record is complete as far as the medical records are concerned there are very very important very significant issues surrounding discovery that we feel should be completed before any decision is made as to whether or not these officers are entitled to any there was far more discovery in this case than this type of case typically gets what specifically did you your client not get access to that he needs the client had unfettered access to his medical records there's no doubt about that or depositions the world the only deposition taken was his he has not taken any depositions nor was he in any physical or mental condition to do so he did propound a lot of discovery there's no doubt about that he has you know time on his side and he is able to put together written discovery and ask certain questions and that was responded to he did receive again like I said the the record I know you haven't had an opportunity to review it it's thousands of pages long it is the complete medical record there are no expert doctors that can or experts that can testify surrounding whether or not the physicians were responding to his medical needs and appropriate manner not to take anything away from the physicians or the officers but this particular type of wound care this particular type of infection is very they are not able to move the way that you and I are able to move around so there is going to be the onset of these bed sores in almost all cases now you said I mean miss Glazer suggested that he was injured in 2005 I believe that's the case again he was so for some reason he didn't get the bed sores until around 2011 he did not get the bed sores until he was I guess became a bit more immobilized in prison well what's he in but he was in prison the whole time yes I believe so yes well I mean I just you know just knowing what I've seen on TV I mean surely couldn't he develop upper body strength so as to be able to move himself around somewhat I would assume so yes your honor that the concern that I have or is that these particular type of sores do not mean they don't necessarily develop right away but the problem is once they do develop once you get one single sore once you develop a bed sore you have an infection that sets and at that point it is tantamount to your any success it's very difficult to treat these though don't you agree with that I don't think that it's I think that it may be difficult I would agree that it may be difficult to treat but I do not think that it's impossible to treat and I do not think that it gets to a point to the point that it is now I guess the problem is you're not a doctor and I'm not a doctor and we have three doctors who all said we did what we we're doing what we can for him but those doctors are the doctors who are defendants in this case again I think that discovery on the issue allowing for an independent medical examiner to come in and explain to the court or to us exactly what would be the most proper method of care you know they talk we talk about all of these separate issues in the brief the pain medications the board the wound care the air mattress those are all things that are very very very essential to his recovery they call it minutiae and that it's it's trivial there is nothing trivial about missing wound care 235 times over the course of three years that is not minutiae that is three years over three years yes your honor that is deliberate indifference that there is no question in my mind that that is deliberate indifference what the what discovery did you request by you I'm of course being your client request in the district court that he didn't receive I don't believe that the record shows that he did not receive anything that he didn't request again your honor I think most of the information that was requested was medical records from outside facilities maybe that he had gone to medical records from the facilities from the what you what is in the record before you again like I said it is mostly just years of administrative procedures ARPs the disciplinary rules of for the for LSP or the or like I said or the medical records he did not he was not able to take the depositions of any of the defendants he was not able to take any depositions of any witnesses that could corroborate his allegations there are clearly issues of fact surrounding whether or not he explained or voiced these concerns to Warden Cootey or Warden Norris they suggested that he did not they suggested that he did not disclose any of this to them which there are people that could corroborate his his story there or we could just have them to what they said about what they to be a little more precise miss Cootey was only there for two months during the period covered by his complaint and then she was transferred to another unit yes your honor but the in the original brief they suggest that you know or in her affidavit she suggested she never spoke to him but in their reply brief they point to no instance where he can say when he actually spoke to them but but all I'm saying is the most that she could have been deliberately indifferent for was two months perhaps two months within a situation like this could be two years worth of treatment two months of disregard is equivalent to a year's worth of setback getting to the specific allegations that we have made in brief that we find are issues of fact that this court is being asked to consider in determining whether or not these officers or the doctors acted with any and when with any deliberate indifference towards mr. Bonner you know I want to first like I said get to the wound care dressing again you suggested that you're not a doctor I'm not a doctor either I have personal experience with someone who had these particular type these particular type of ulcers you know my brother had spina bifida or has spina bifida and hasn't had it since birth and I've seen him go from a tiny sore to a grandiose infection to a healthy human being so it's possible it's very difficult to treat I do not dispute that but it is not impossible to treat if it's being treated and handled in a manner in which you or I would expect that to be handled and that is not how it was handled in this case that may well be the case and so that brings us to the steward opinion because when you're in prison you're at the mercy of the government and the standard is deliberate indifference not medical malpractice so how do you distinguish the Stewart case well in the Stewart case we weren't talking about the same length of time in the Stewart case the while yes it did involve to keep it a soldier died in six months or less yes ma'am what but the time frame that was that there was alleged to be some type of indifference was a very short period of time and the court found that they were not deliberately indifferent they found that this court I'm sorry well no that did exactly they found that they were not deliberately indifferent but it was a compressed period of time whoever was at the hospital had ever seen well I can tell you that in this case this is this would be the worst case of decubitus ulcers or bed sores that you ever seen it is his condition has progressed to a point now where he's effectively rotted from the inside out his there's there's no distinguishing tissue between his urethra and his lower body cavity where perhaps not to get too graphic but almost his anus no ma'am that is something that has come to light since the since the record was created that is just in conversations that I've had with Mr. Bronner since recently and he is going to he's set to be released from prison in I believe at the end of next month at which point ideally he would be able to get some type of medical care that arguably would allow him to regain some of essentially become get rid of the infection I mean that's the number one concern is eliminating the infection you cannot eliminate the infection if you are not treating the superficial wounds you cannot get rid of the infection if you are allowing these wounds to fester and progress to a point where they're almost incurable he in this in this instance they talk about the slide board being again useless he's got he has he can pull himself up out of bed and all that stuff they rely upon nurses to turn him nurses to help him in and out of bed the same nurses that are not changing his wounds the same nurses that refuse to change his wounds pursuant to those you know this is very pitiful no doubt about it but is he getting any worse treatment than he'd get in an average nursing home or an average hospital because there's no you know I believe that it would be a sad state of affairs if he were in a private facility and someone came to me and said we're sorry that you know we just we didn't get around to changing his wounds for the last 29 days that to me is if you did it how many times in the record there how many examples because again I didn't I saw your summary it's it's over seven pages of my brief your honor I understand that but I didn't I don't recall although I looked ahead to look at it rather quickly seeing a 29 day complete gap in changes of dressings or wound care was 25 days was the was the longest was the longest and what what period was that several years ago it was between 2011 and 2014 I mean I'm not well that's a pretty broad period but that's impossible because he would have been going to the bathroom he would have been bathing himself in bed he would have been showering presumably these are removable bandages yes it's not possible that they had the same bandages on him for 25 days given the normal activities of a human being's life I think it's very possible and I it is that if it is possible and if it was allowed to happen then I mean and again that would we like to think that in the perfect world that that did not happen well let me ask you this does the record affirmatively reflect that this didn't happen or is there a gap in the record key there's a gap in the record gap in the record keeping yes okay so yes I would like to think that there is no scenario in this world where someone would allow something like that to there are gaps in the records that at this point all we can all we can infer from that is either one that the records were not kept properly or two that he did not receive the treatment that he was supposed to receive either way there is a dispute there as to whether or not something occurred or did not occur and again the showers and the wound care were the responsibility of the nurses what's your evidence that the doctors knew about this from their review of the patient if the doctors were treating the patients consistent with their own specific orders they would have had to have come in contact with the patient over those periods of time you know like is there any record of how often they visited him the as far as the there are again there are gaps in the record that show perhaps where one of the physicians did not see him for you know a period in excess of you'd say 15 days up to 30 days it's not routine I'm not suggesting that but there are there are instances where there are larger gaps in actually seeing one of the treating physicians now in in seeing to your point if the physician is going to treat him in a manner that we find acceptable if the if doctors going to treat him and adhere to his own orders or see him even if you saw him on a weekly basis it would be it would be apparent to that physician whether or not he was receiving appropriate wound care whether or not he was receiving the bathing I mean there there's information the record that indicates you know foul smells pus I mean those are not things that are present whenever people are receiving wound care on a daily basis those are not things that are present whenever people are being bathed or showered yes it may be a bit of a burden because he can't go stand up in a shower stall and take a shower and he may be confined to bathing in bed if that if those are the two options that this gentleman's given but if he's if he's not getting that the physicians know that he's not getting that then that is deliberate indifference on their part they don't we're not suggesting that they're liable for what the nurses did or didn't do there's no such thing as vicarious liability in these situations we're not trying to impute the negligence of these or the deliberate indifference of these nurses to the doctors we're saying that the doctors in and of themselves are not paying attention to the medical needs of Mr. Bronner or to the patients to a point that it amounts to deliberate indifference they're allowing these things to happen and I only have a minute and a half left and I do do you does judge Jones have a question for me I want to and I know that the court has read the briefs but I want to ensure that the court understands that if you take the slide board that is one piece of the spectrum if you take the air mattress that is one piece of the spectrum if you take the pain medications that is one piece of the spectrum each of those things individually don't really seem like that big of a deal and they seem like something that you could get past and I don't disagree with that but when you have all of that together when you have someone who is effectively rotting from the inside out being denied pain medication for or being prescribed methadone which is which causes nausea which results in more pain that he can't actually feel or when you have someone who's being denied a slide board something that would allow him to move in and out of bed without disrupting his bandages without tearing his wounds tissue that's already very very susceptible to being torn whenever you have ineffective wound care when you have a bandage that sits there for several days at a time when someone goes to take that off it rips whatever's healed so you're never going to progress beyond that you're never going to progress beyond that so in closing I think that when you take all of those facts together in total there can be no other finding by this court other than that there was deliberate indifference on behalf of these actors all right sir thank you very much thank you thank you your honor methadone hasn't been prescribed since well before the statute of limitations cut off it was in 2010 or something not part of this lawsuit the methadone prescription itself and he was prescribed lortab and tummy but Oh Fenergan he had an almost consistent prescription for Fenergan on an as-needed basis for years so yeah he's gotten plenty of treatment for nausea the optimal standard of care that the American Medical Association sets or that the doctors set for themselves or that prison policy sets are completely irrelevant to this inquiry the question is deliberate indifference and a gap in medical records is not necessarily indicative of a gap in treatment particularly when what is notably absent from the plaintiff's actual pleaded allegations is that he was ignored for 25 or 29 days that's not pleaded plaintiff since the very beginning of this lawsuit has said he has gotten improper treatment it has been inadequate all of the defendants have collectively acted with deliberate indifference proven by the fact that he in his opinion has not gotten better but as he testified as the record shows he does he wounds heal and they come back it's part of the condition they are treated he's treated with antibiotics with wound care dressings and all those things you're saying the record will show that some of these wounds healed or got considerably better and then deteriorated again absolutely in fact in his deposition he specifically testified that the wound the first wound he had gotten in 2010 or 2011 had healed at the end was healed at the time he gave his position they did they got better and worse he called it a cycle which would be an accurate description with regard to discovery judge Smith you're right the plaintiff did not ask for any additional discovery to respond to the qualified immunity defense generalized requests for depositions without any indication as to what specific fact is in dispute that they want to request is not appropriate and qualified immunity case I should also note that only dr. McMurdo was still at Angola and dr. Collins retired dr. Roundtree transferred to a different facility and so when we're talking about his current condition neither of them have anything to do with it doctors Collins or roundtree and the plaintiff fired dr. McMurdo quite some time ago something most inmates do not have the luxury of doing he did fire dr. McMurdo and has a new treating physician at his emphatic request he also testified about that in his deposition the doctor those two months what happened during those two months I mean not only were they you know two months in a very vague amount of time but what did happen according to his ARP grievance when they were evacuated in a to be changed does not sound like deliberate indifference and assistant warden Norris didn't even come until after he filed his ARP and warden Norris all he did was investigate the ARP which he did and respond to it in a way that was not satisfactory to the plaintiff overall this vast record doesn't need to be clarified by judge Afrik disputes of fact are not material these minor disputes about whether the pain medication was good enough or whatever they're not material the legal question that this court can answer and should answer now is whether or not these defendants should be held personally liable for deliberate indifference and we respectfully suggest they should not thank you okay thank you very much we have your argument thank you